## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRITTNEY MILLS,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 14-593** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                                    **October 5, 2023**

Plaintiff Brittney Mills sues Defendants the City of Philadelphia, Michael Alice, Timothy Dunne, Thomas Liciardello, John Speiser, and Jeffrey Walker[1] for various alleged constitutional violations and corresponding state law torts arising from her arrest in 2011. Mills' lawsuit is one of "hundreds of civil rights lawsuits arising from allegedly criminal acts committed by members of the Philadelphia Police Department's Narcotics Field Unit." *McIntyre v. Liciardello*, No. 13-2773, 2020 WL 605717, at *1 (E.D. Pa. Feb. 7, 2020). Alice, Dunne, Liciardello and Speiser—all former or current Philadelphia Police officers (collectively, the "Officers")—each move for summary judgment on Mills' claims against them. (ECF 66 (Alice), 68 (Dunne)[2], 69 (Liciardello

---

[1]      After Mills filed her Amended Complaint, all Defendants but Walker filed Answers. (ECF 23, 27.) Mills' counsel repeatedly represents that Mills has a default judgment against Walker. (*See, e.g.*, ECF 74 ¶ 39.) She does not. Her July 9, 2014 Motion for a Default Judgment against him (ECF 9) was premature and was never granted. Rather, after Judge Diamond remanded this case to this Court for further proceedings, Mills requested an entry of default against Walker since he had not answered the Amended Complaint. (ECF 39.) The Clerk's office entered a default against him on March 29, 2021, consistent with Federal Rule of Civil Procedure 55(a), but Mills has not moved for a default judgment as required by Federal Rule of Civil Procedure 55(b).

[2]      The City moves for summary judgment along with Dunne (ECF 68) but the Court reserves the question of whether summary judgment is warranted in the City's favor for a subsequent decision.

and Speiser).) For the reasons set forth below, the Court grants the Officers' Motions.

## I.      BACKGROUND

### A.      Procedural History

Mills filed a Complaint against the City and Walker in January 2014. (ECF 1.) Judge Stewart Dalzell, to whom this case was originally assigned, subsequently placed it in suspense pending resolution of consolidated cases involving the Narcotics Field Unit that were then-pending before Judge Paul Diamond. (ECF 15.) The next day, Mills filed an Amended Complaint—the operative complaint—naming the City and Alice, Dunne, Liciardello, Speiser, and Walker as Defendants. (ECF 16.) Shortly thereafter, Judge Dalzell consolidated this case with the cases pending before Judge Diamond upon agreement of the parties. (ECF 17.)

Mills' case was eventually selected as a bellwether case, and in March 2021, Judge Diamond remanded it to this Court for further pretrial proceedings and trial. (ECF 37.) Thereafter, the Officers and the City moved for summary judgment.

### B.      Evidence Relevant to the Officer's Motions

Before considering the Officers' summary judgment motions, it is first necessary to explain how the Court determined what evidence it considers in deciding them because of Mills' counsel's failure to fully comply with the Federal Rules of Civil Procedure and the Court's Orders.

The Court's routine scheduling order identified the parties' obligations when moving for summary judgment. (ECF 45 ¶¶ 5(a)-(d).) It required the movant to file a statement of undisputed material facts in numbered paragraphs (ECF 45 ¶ 5(a)), and the respondent to file a "separate Statement of Disputed facts, responding to the numbered paragraphs set forth in the movant's Statement of Undisputed Facts" and "any additional facts which the respondent contends preclude

2

summary judgment" in separate numbered paragraphs. (ECF 45 ¶ 5(b).) The movant and respondent were also directed to cite "specific and not general references to the parts of the record which support each of the statements . . . including the title, page, and line of the document supporting the statement." (ECF 45 ¶ 5(d).) The Court warned that all facts set forth by the movant would be "admitted unless controverted by the opposing party" and that failure of the respondent to follow these requirements "may result in the Court's considering the motion [for summary judgment] as uncontested." (ECF 45 ¶¶ 5(c)-(d).)

Alice independently moved for summary judgment. (ECF 66.) Liciardello and Speiser filed a joint motion for summary judgment (ECF 69) and the City and Dunne filed a separate joint motion for summary judgment. (ECF 68.) Mills' initial responses to their motions were disorganized, at best. She responded to Alice and Dunne's arguments in a single filing. (ECF 74.) She then responded to Liciardello and Speiser's joint motion with multiple filings. (*See* ECF 84, 85, 88.) And she filed a legally baseless motion seeking to dismiss the City and Liciardello's motions. (ECF 71.)

The Court denied Mills' Motion to Dismiss Defendants' summary judgment motions as procedurally improper and struck her separate responses to Liciardello and Speiser's joint motion, but gave her leave to file appropriate responses. (ECF 91.) Specifically, Mills was directed to file one response to the City's arguments and one response to Liciardello and Speiser's motion. (ECF 91 ¶¶ 3(a)-(b).) The Court also explicitly required Mills to comply with Paragraph 5 of its May 20, 2021 Order. (ECF 91 ¶ 3(c).) And it again warned that, if she did not, the Court might strike her responses and consider Defendants' summary judgment motions as unopposed. (*Id.* ¶ 3(d).) Unfortunately, Mills' subsequent filings largely fail to comply with the Court's Orders or the

Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 56(c), (e).

Alice submits sixty-four paragraphs of undisputed, material facts (ECF 66 at 1-13) and the City and Dunne (who move together) submit forty-nine paragraphs of facts. (ECF 68-2.) In Mills' single response to Alice and Dunne's separate motions, she responds with thirty-nine paragraphs of facts—many of which do not respond to the movants' statements of facts—and she presents seven additional pages of facts in narrative form with some citations to the record. (ECF 74, 74-1 at 1-7.) Even where Mills provides specific citations to the record, her submission does not include the appropriate exhibits. For example, she cites to Exhibit E as Defendant Walker's deposition, but she only provides Exhibits A-B, J, and M to the Court. (ECF 74-2 through 74-9.) Mills also responded separately to the City with a narrative recitation of the facts (not in numbered paragraphs), sparing citations to the record, and approximately 800 pages of attached exhibits. (ECF 95.) Mills' combined responses to the facts that Alice and Dunne present in their motions leaves the Court in an untenable position. The Court has had to comb through the record to locate exhibits she sloppily cites and missing transcript pages that can only be found in exhibits she submitted *after* her initial response to their motions.[3]

Liciardello and Speiser present thirty-six undisputed, material facts. (ECF 69 at 4-8.) Mills responds to them with twenty paragraphs—none of which respond to Liciardello and Speiser's

---

[3]    For example, in her response to Alice and Dunne, Mills cites to "( Exh F SJM page 13 line 14; page 26 line 3-8 ) ; page 26 lines 6-10 and 18-22)" referring to Jeffrey Walker's deposition testimony. (ECF 74 ¶ 8 (grammatical errors in original).) However, the relevant portion of Walker's deposition is not actually in Exhibit F to Alice's summary judgment motion (assuming that this is what Mills is referring to). (*See* ECF 66.) Rather, Mills herself later includes this testimony in her response to the City's summary judgment motion. (ECF 95-11, Walker Dep. Tr., 13:15-24; 14:1-3.) Mills thus cites to pages of transcripts that neither she nor Defendants had previously provided to the Court.

facts with affirmative record evidence—and multiple pages of additional facts in narrative form.[4]
(ECF 93, 93-1.) In the narrative portion of Mills' response to Liciardello and Speiser's facts, she
supports some facts with specific record citations and some with more general citations, but *many*
have no citations at all. (ECF 93-1.) Mills' paragraph form "response to the alleged undisputed
facts" provides just one citation to the record. (ECF 93 ¶ 5 (citing "Exhibit C").) And, upon
inspection, the unsupported facts she provides in numbered paragraphs are not necessarily facts at
all. For example, she "disputes that there was ever a buy and whether there was ever a CI since
this [*sic*] [Narcotics Field Unit] Officers were notorious for their lives [*sic*], stealing and other
corrupt activities." (ECF 93 ¶ 3.) Mills cites no record evidence to support her contention that there
was no confidential informant in this case. It appears she wants the Court to conclude there was
no confidential informant—based on no evidence—because the Narcotics Field Unit Officers had
a history of corruption. This is argument. It is not evidence that can support her claims on summary
judgment.[5] Mills also argues, with no citation to the record, that if the Officers do not remember
the incident with her, they cannot claim they never participated in her arrest or prosecution. (*See,
e.g.*, ECF 93 ¶¶ 12-13.) This is not how summary judgment works. To defeat Liciardello and
Speiser's motion, which argues there is no evidence of their involvement, it is Mills' burden to
respond with affirmative *evidence* of the Officers' involvement.

---

[4]  Mills actually filed *two* responses to Liciardello and Speiser's summary judgment motion
(ECF 92 and 93), writing to the Court she had technical difficulties with the first filing.

[5]  When Mills argues about whether the Officers stole money and drugs (*see, e.g.*, ECF 93
¶ 7), she seems to misunderstand what her case is about. The issue in this case is whether they
violated her constitutional rights during the search, arrest, and her subsequent prosecution. This
litigation is not an opportunity for Mills to relitigate the criminal charges previously pending
against any officers.

The Court directed Mills to file her facts in opposition to the Officers' summary judgment motions in *separate*, *numbered* paragraphs with specific citations to the record. (ECF 45, 91.) Like Defendants, Mills was also entitled to include a narrative fact section in her briefs. But Mills was not permitted to raise facts that she contends defeat summary judgment in a narrative fact section or her argument section *only*—especially after the Court twice ordered her to do so in numbered paragraphs. Mills' counsel's inability or unwillingness to read, understand, and follow the Court's Orders and applicable Federal Rules of Civil Procedure places the Court in a difficult position.[6] Consistent with Rule 56(e) and as the Court warned the parties, the failure to follow its Orders and respond to the movant's facts in appropriate numbered paragraphs can result in facts being deemed admitted. The Court thus deems admitted each fact in Defendants' statements of undisputed material facts to which Mills failed to properly respond, to the extent the fact is supported by the movant's cited materials.[7] The Court also considers Mills' numbered paragraphs of facts accompanying her briefs—including those that respond to Defendants' statements of undisputed

---

[6] The Court must emphasize here that Mills hired counsel to represent her interests. She is not representing herself. Regardless, all litigants, counseled or not, must follow the rules. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (holding that even pro se litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants"). So, the Court will only consider the facts that have been *properly* presented to it. Unfortunately for Mills, her lawyer repeatedly failed to follow the Court's orders and the Federal Rules of Civil Procedure. When the Court raised Mill's counsel's continued inability to follow the Court's orders and rules in a status conference (ECF 101), she responded only that "she tried."

[7] *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175-76, 176 n.7 (3d Cir. 1990); *Robinson v. New Jersey Mercer Cnty. Vicinage-Fam. Div.*, 562 F. App'x 145, 149 (3d Cir. 2014); *Schuenemann v. United States*, No. 05-2565, 2006 WL 408404, at *4 (3d Cir. Feb. 23, 2006); *see also Rosado v. Smith*, No. 21-515, 2022 WL 225564, at *1-2 (E.D. Pa. Jan. 26, 2022); *Castillo v. Guzley*, No. 19-4002, 2022 WL 101922, at *1 (E.D. Pa. Jan. 11, 2022); *Orzech v. Muhlenberg Twp.*, No. 18-3938, 2020 WL 6336069, at *1 (E.D. Pa. Oct. 28, 2020); *Ortiz v. Cedar Crest Coll.*, No.16-6703, 2017 WL 6422164, at *1 (E.D. Pa. Dec. 18, 2017).

material facts and those that provide additional facts—to the extent they are supported with specific citations to the record. Where Mills raises *new* facts in her narrative or argument sections that do not appear in her numbered paragraphs, the Court does not consider them. Finally, to the extent any facts raised by any party are not supported by a specific citation to the record, the Court does not consider them. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (citation and internal quotation omitted).

With that, the Court turns to the relevant facts relating to Mills' claims against the Officers. If the Court includes a fact, the reader should assume the Court has reviewed Defendants' citations to the record for that fact and concluded there is adequate support.

**The parties.**[8]

Brittney Mills is an African-American woman who resided at 2510 North Opal Street Philadelphia, PA 19199. (ECF 66, Ex. I.)

Officers Thomas Liciardello, John Speiser, and Jeffrey Walker were Philadelphia Police Department officers assigned to the Narcotics Field Unit. (ECF 69-1 ¶¶ 7-8; ECF 66, Ex. B, Alice Dep. Tr., 9:11-10:15.)

Officers Michael Alice and Timothy Dunne were patrol officers employed by the Philadelphia Police Department and assigned as partners to "5 Squad" (a tactical unit) in the 16th Police District. (ECF 66, Ex. B, Alice Dep. Tr., 6:15-20, 7:11-13, 7:20-9:6; ECF 66, Ex. C, Dunne Dep. Tr., 6:15-7:4, 7:15-22.) As patrol officers who did not work in the Narcotics Field Unit, they

---

[8]     The parties' descriptions are based on their jobs and characteristics as of the date giving rise to Mills' claims.

could not conduct narcotics surveillance or controlled buys of narcotics using confidential informants. (ECF 66, Ex. B, Alice Dep. Tr., 16:17-19, 70:3-7; ECF 66, Ex. C, Dunne Dep. Tr., 11:19-20, 12:3-19.) They could arrest individuals they personally saw engaged in drug activity while on patrol. (ECF 66, Ex. B, Alice Dep. Tr., 15:19-16:16, 31:2-13.) If they received a tip or information about suspected narcotics activity, they would notify the Narcotics Field Unit Officers. (ECF 66, Ex. B, Alice Dep. Tr., 69:12-70:10; ECF 66, Ex. C, Dunne Dep. Tr., 12:14-19, 17:14-18:23.)

***Walker obtains a search warrant for 747 N. 37th Street using some false information.***

It is undisputed that Walker obtained a search warrant for 747 N. 37th Street by using some false information. (ECF 66 ¶¶ 18-19; ECF 74 ¶ 6.) However, it is unclear—based on the record—what information in the Affidavit of Probable Cause for the warrant was false and how Walker obtained that information.[9] For example, there is a contradiction in the record as to whether and/or what information Dunne provided Walker about drug sales at or near 747 N. 37th Street in Philadelphia ("the Property").[10] To the extent that Dunne did provide Walker with information

---

[9]    Walker admitted that he falsely claimed to have observed a confidential informant make a controlled buy from a woman matching Mills' description at 747 N. 37th Street. (ECF 66, Ex. E, Walker Dep. Tr., 827:3-829:13.) This fact is undisputed by the parties.

[10]   While Walker's Affidavit of Probable Cause and Investigation Report indicated Dunne and Alice provided this tip (ECF 66, Ex. D; ECF 66, Ex. H), Walker gave conflicting testimony about whether Dunne or Alice provided this information to him. On October 13, 2016, Walker testified in another case involving the Narcotics Field Unit that he did not remember whether Dunne or Alice provided him with information for the probable cause affidavit. (ECF 66, Ex. E, Walker Dep. Tr, 795:9-15.) Later in that same deposition, Walker claimed to recall Dunne and Alice gave him the information. (ECF 95-29, Walker Dep. Tr., 852:9-10.) Then, in his July 14, 2021 testimony, Walker testified that he could not recall whether Alice or Dunne gave him such information. (ECF 66, Ex. F, Walker Dep. Tr., 9:6-13; 28:14-29:5.)

Dunne also gave conflicting testimony about whether and what information he provided

about drug sales at or near the Property, Mills does not dispute the veracity of such information—in other words, she does not claim, much less present affirmative evidence in the record, that Dunne or Alice provided false information to Walker. And to the extent that neither Dunne nor Alice provided Walker with information about drug sales involving the Property, such that Walker falsely attributed information to Dunne and Alice, Mills provides no affirmative record evidence demonstrating that Dunne and Alice were involved in or aware of Walker's false attributions to them in this or any other case.[11]

---

Walker regarding the Property. As Mills points out (ECF 74 ¶ 25), during Dunne's July 22, 2021 testimony he first stated that he did not recall the exact information he received, but that he was aware of drugs being sold on the block around the Property, but "not the exact house." (ECF 66, Ex. C, Dunne Dep. Tr., 11:1-6.) Yet shortly afterward, Dunne testified that he provided Walker information about narcotics sales around 747 N. 37th Street. (ECF 66, Ex. C, Dunne Dep. Tr., 13:18-14:11, 14:24-16:4, 22:2-16, 23:7-8, 28:1-2, 29:5-21, 57:7-58:3.) Alice, for his part, testified that he did not remember giving Walker the information specifically at issue in this case, though he stated that he had given Walker information about narcotics sales in the 16th District at times. (ECF 66, Ex. B, Alice Dep. Tr., 26:21-27:3, 30:8-24.)

[11]     Walker testified that it was "usual or customary" for Alice and Dunne to provide information to him about narcotics sales because "[t]hey're the district officers that actually patrol that area." (ECF 66, Ex. E, Walker Dep. Tr, 795:4-8.) And he also testified that on "more than one" occasion, he put Alice or Dunne's name down as having provided him information about drug sales in the 16th District to give them court time even if they did not provide such information. (ECF 66, Ex. F, Walker Dep. Tr., 8:2-9:23; 28:17-29:5; 129:9-23.) ("I put Alice and Dunne as giving me the information that this is getting on the job because we go to trial they going to call them because they received the information. But I know by past experience even though they gave them the information I'm the one that's going to be testifying in court. But sometimes they do give me information because they patrol officers they see things, but in this occasion, this occasion here, I don't know if they gave it to me or they didn't but I know what my practices are. And I know they did not see what I indicated they saw. . . . Q: Did Officer Alice or Dunne provide any information? A: I couldn't tell you did or didn't because it's only information. The misconduct came after that information that was provided for me.")

Mills focuses heavily on the alleged scheme Walker described, characterizing it as "a quid pro quo agreement between Alice & Dunne and Walker" and a "conspiracy, express or implied" between the three. (ECF 74 ¶¶ 15, 36, 38.) The problem is that Mills has not provided any affirmative evidence showing that Dunne and/or Alice were participants in the scheme Walker

It is clear from the record, however, that Walker engaged a confidential informant to do a controlled buy using pre-recorded buy money at the Property on January 5, 2011. (ECF 66, Ex. D; ECF 66, Ex. H.)[12] Between 1 and 4 p.m. that day, the informant purchased PCP from a "black female in her early twenties wearing a black sweater, black pants, and dark colored shoes" and provided two small jars with blue tops containing PCP to Walker. (ECF 66, Ex. D; ECF 66, Ex. E, Walker Dep. Tr., 827:17-828:6; 828:23-829:13.) Walker worked alone with the confidential informant, and Alice and Dunne were not present for the surveillance of the Property or the controlled buy. (ECF 66, Ex. F, Walker Dep. Tr., 19:16-20:1, 130:3-7; ECF 66, Ex. B, Alice Dep. Tr., 59:18-20; ECF 66, Ex. C, Dunne Dep. Tr., 22:14-16, 23:21-23, 33:8-15.) Based on Walker's surveillance of the Property and the confidential informant's controlled buy, Walker applied for, and obtained, a search warrant for the Property. (ECF 66, Ex. D.)

Specifically, Walker attested:

> On 1/5/11 P/O Walker received information from P/O Alice#4467 and P/O Dunne#3133 of the 16th district about a B/F heavy set in her early twenties selling "PCP" from inside 747 N. 37th St.[13] P/O

---

[12]     Though in her response to Liciardello and Speiser, Mills states that she "would dispute the fact there was a controlled buy with her," she provides no citation to the record for this assertion. (ECF 93 ¶ 8.) Thus, the Court cannot consider it when assessing the existence of a genuine dispute of material fact.

reported, let alone that they deployed this scheme *in this specific case*. The record merely demonstrates that Walker himself had a practice of attributing information to Dunne and Alice; it does not demonstrate, based on any evidence Mills presented, that Dunne or Alice knew Walker was falsely attributing information to them in his probable cause affidavits.

[13]     The parties make much ado about whether Dunne (and Alice) personally observed a Black, heavy-set female selling narcotics out of 747 N. 37th Street or merely received information about narcotics sales at the Property from their role as patrol cops in the area. It is immaterial to this case.

Walker wrote in his probable cause affidavit: "On 1/5/11 P/O Walker received information from P/O Alice#4467 and P/O Dunne#3133 of the 16th district about a B/F heavy set in her early

Walker#3730 conducted a real estate check of the address and found it owned by Michael Smalley.

On 1/5/11 P/O Walker#3730 met with a confidential informant and the informant was searched for money, drugs, paraphernalia with negative results and was given $20.00 pre-recorded buy money ser#:EC59121442C and debriefed on narcotics purchases that would be made at 747 N. 37th St.

Between 1:00pm and 4:00pm . . . P/O Walker#3730 and the informant went to the 700 block of north 37th St., where P/O Walker#3730 observed the informant approach 747 N. 37th and knock on the front door, a unknown black female in her early twenties wearing a black sweater, black pants and dark colored shoes answered the door. After a brief conversation the informant gave the $20.00 of pre-recorded buy money to the female, in returned [*sic*] the female closed the door leaving the informant on the porch, after approximately (2) minutes the previously mentioned female opened the front door and gave the informant several small objects. The informant returned back to P/O Walker#3730 and gave the officer (2) small jars with blue tops containing a green leafy substances [*sic*] of alleged "PCP".

                                    ***

Based on the information received, the surveillance made by P/O Walker#3730 and the purchase of "PCP" from inside 747 N. 37th St. by the confidential informant. Your affiant P/O Walker #3730 believes that illegal narcotics are being stored and sold from inside 747 N. 37th St. and respectfully request that this daytime Search Warrant be approved.

(ECF 66, Ex. D (Affidavit of Probable Cause).)

---

twenties selling 'PCP' from inside 747 N. 37th St." (ECF 66, Ex. D.) As Dunne aptly points out, it does not say Alice and Dunne personally observed this, just that Walker received this information from them. (ECF 66, Ex. C, Dunne Dep. Tr., 13:4-14:4.) Dunne testified that if he personally observed someone selling drugs, he would have used his police powers to arrest the individual, so he knows he did not personally observe someone selling drugs at the Property. (ECF 66, Ex. C, Dunne Dep. Tr., 12:7-19, 15:9-10.) Additionally, and consistent with Dunne's testimony, Walker testified he knows Dunne did not personally observe this. (ECF 66, Ex. F, Walker Dep. Tr., 29:4-5.)

Despite what Walker's probable cause affidavit says, he has since testified that he lied in it, because he did not personally observe the confidential informant make the controlled buy at the Property. (ECF 66, Ex. E, Walker Dep. Tr., 827:3-829:13.) Instead, he relied on the information the confidential informant provided to him and used that information in the probable cause affidavit while attesting that he "personally observed" it. (*Id.*) This is the only part of the probable cause affidavit—as identified in the record by either the Officers or Mills—where there is evidence of fabrication.

***The Narcotics Field Unit South Officers execute the search warrant, and Mills is arrested.***

Later that night at 6:45 p.m., the Narcotics Field Unit South Officers, including Walker, Speiser, and Liciardello, executed the search warrant Walker had obtained for the Property. (ECF 66, Ex. H; ECF 69-1, Ex. C ¶ 11.) Speiser found, and confiscated, "[one] box containing numerous new and unused clear jars with blue tops identical to [*sic*] which the informant purchased" in a kitchen cabinet. (ECF 66, Ex. H.) Liciardello found, and confiscated, "[one] jar containing a green leafy substances [*sic*] of alleged 'PCP' with the weight of 30 grams, [one] clear plastic baggie containing [thirteen] clear jars with blue tops containing a green leafy substances [*sic*] of alleged 'PCP' identical to [*sic*] which was purchased by the informant and [one] small plate with a white plastic spoon with a green leafy residue of alleged 'PCP'" in the kitchen freezer.[14] (*Id.*) Dunne and Alice arrived at the Property as a uniform presence after Walker, Liciardello, and Speiser

---

[14]     Mills again fails to properly dispute whether Speiser and/or Liciardello recovered drugs from the Property. She merely states in her response: "No drugs were ever seen nor were the jars with blue tops. It is disputed that these items ever existed and if they did or still exist they haven't been produced nor has the CI." (ECF 93 ¶ 9.) Because Mills provides no citation to the record supporting this assertion, the Court cannot consider this for purposes of finding a genuine dispute of material fact.

executed the warrant and searched the house. (ECF 66, Ex. C, Dunne Dep. Tr., 38:3-11, 42:10-22.) While Alice and Dunne did not participate in the search, Walker reported that Alice arrested Mills in the Property's first-floor front bedroom after Walker identified her as the individual who sold PCP to the confidential informant. (ECF 66, Ex. H.) Walker also reported that Dunne searched and confiscated $6.00 from Mills' purse. (*Id.*) In contrast, Alice testified he did not recall arresting Mills, and Dunne testified he did not recall confiscating her money. (ECF 66, Ex. B, Alice Dep. Tr., 41:21-23; ECF 66, Ex. C, Dunne Dep. Tr., 38:12-16, 39:22-24, 59:16-21.) Mills recalls two to three officers handcuffing everyone at the house, including her, but she does not remember which officer physically handcuffed her. (ECF 66, Ex. G, Mills Dep. Tr., 91:15-92:16.) She also cannot recall if she had any contact with the officers in standard blue police uniforms. (*Id.* at 176:21-24.) No one disputes that someone from the Philadelphia Police Department arrested Mills at the time the Narcotics Field Unit executed the search warrant.

### *Walker completes necessary arrest paperwork, testifies at Mills' preliminary hearing, and Mills pleads guilty to various narcotic crimes.*

Following execution of the warrant and Mills' arrest, Walker completed the Philadelphia Police Department Investigation Report (ECF 66, Ex. H), Philadelphia Police Department Arrest Report (ECF 66, Ex. I), and property receipts for material seized from the Property. (ECF 66, Ex. J.) Speiser, Liciardello, Dunne, and Alice did not complete or otherwise participate in the drafting of the paperwork. (ECF 66, Ex. H) (confirming Walker completed paperwork on January 9, 2011); (ECF 66, Ex. I at 2) (confirming Walker completed arrest report); (ECF 66, Ex. J) (Walker signed property receipts for material seized).) Mills was ultimately charged with three crimes: possession of a controlled substance with intent to deliver; possession of a controlled substance; and possession of drug paraphernalia. (ECF 66, Ex. K; ECF 66, Ex. L.) She was arraigned on January

6, 2011—the day after her arrest—and she posted bail on January 9, 2011. (ECF 66, Ex. L.)

Mills attended her preliminary hearing on January 24, 2011 where the District Attorney called only Officer Walker to testify. (ECF 66, Ex. M.) Walker gave testimony consistent with the information contained in the Investigation Report and Arrest Report, including that: (1) he used and observed the confidential informant (which he has since admitted is false); (2) Liciardello and Speiser seized narcotics and narcotics paraphernalia from the house; (3) Dunne seized Mills' money from her person; and (4) Alice arrested Mills. (ECF 66, Ex. M, Preliminary Hearing Tr., 5:3-7:20.) The judge held the charges over for trial. (ECF 66, Ex. M, Preliminary Hearing Tr., 13:24-14:4; *see also* ECF 66, Ex. L.)

Mills ultimately pleaded guilty to possession of a controlled substance and possession of drug paraphernalia in August 2012 and was sentenced to two years' probation. (ECF 16 ¶ 18.) But her charges were ultimately *nolle prossed* by the Honorable Sheila Woods-Skipper on December 6, 2013. (*Id.* ¶ 21.)

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to

judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) (citing *Singletary v. Pa. Dep't. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotations omitted)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322-23).

## III.   DISCUSSION

Mills sues the Officers for excessive force (Count I), battery (Count II), assault (Count III, IV), unlawful arrest (Count V), false imprisonment (Count VI), unjustified search (Count VII), malicious prosecution (Counts VIII and IX), conspiracy (Counts X and XI), intentional infliction

of emotional distress (Count XII), and negligent infliction of emotional distress (Count XIII).[15]
(ECF 16.) The Officers move for summary judgment on all counts. For the reasons set forth below,
the Court grants in full the Officers' motions.

> **A.** **Mills' claims for excessive force, battery, assault, unlawful arrest, false imprisonment, unjustified search, intentional infliction of emotional distress, and negligent infliction of emotional distress against the Officers (Counts I-II, IV-VII, and XII-XIII) are time-barred, but her conspiracy claims based on malicious prosecution (Counts X and XI) are timely.**

Liciardello, Speiser, Dunne, and Alice argue Mills' claims for excessive force, battery,
assault, unlawful arrest, false imprisonment, unjustified search, conspiracy, intentional infliction
of emotional distress, and negligent infliction of emotional distress are time barred. (ECF 66 at 22-
25; ECF 68-3 at 6-7; ECF 69 at 13-16.) Mills' response to their argument is confusing at best and
contradictory and nonsensical at worst.

In her response to Alice and Dunne's motions, she first contends the Officers

> are not entitled to summary judgment on plaintiff's sec. 1983 claims of malicious prosecution, nor the federal and state conspiracy claims , which are not barred by the 2 year Statute of Limitations . Mills concedes other claims set forth in the complaint are barred by the 2 year Statute of Limitations, and if so, withdraws those claims that the Court determines to be barred by the 2 year Statute of Limitations.

(ECF 74-1 at 9-10 (Pl.'s Resp. to Alice and Dunne) (spelling and grammatical errors in original).)
She later argues her federal and state conspiracy claims are not time-barred (*Id.* at 12-15) and then
"agrees that the Summary Judgment claims, except for the malicious prosecution claim are barred

---

[15]     Mills also sues the City of Philadelphia for negligent hiring, retention, and supervision of the Officers and for "develop[ing] and maintain[ing] policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City" including "cover[ing]-up and avoid[ing] detection of improper and illegal police activity," as well as "failing to sufficiently supervise against, train, and/or retrain against, and discipline against illegal police activity . . . and against a code of silence." (ECF 16 ¶¶ 76-78, 80; ECF 16, Count XV.)

by the Statute of Limitations." (*Id.* at 16.) She makes the last argument under the heading "state law claims" which the Court presumes she meant instead to say "Summary Judgment claims."

In Mills' response to Liciardello and Speiser's summary judgment motion, she does not expressly concede any claims are time-barred. Instead, she argues her federal and state law claims for malicious prosecution and conspiracy are *not* time-barred. (ECF 93-1 (Pl.'s Resp. to Liciardello and Speiser).)

Because it is not entirely clear whether Mills is conceding some of her claims are time-barred, or is only agreeing to withdraw them if the Court finds they are time-barred (which would be wholly unnecessary because any claims that are time-barred would not survive summary judgment), the Court analyzes whether they are timely.

The statute of limitations for Mills' claims under 42 U.S.C. § 1983 for excessive force (Count I)[16], unlawful arrest (Count V), and unjustified search (Count VII), "is governed by the personal injury tort law of the state where the cause of action arose," and under Pennsylvania law, the limitations period is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Keto*, 549 U.S. 384, 387 (2007); 42 Pa. C.S. § 5524(2)). The limitations period began to run from the time when Mills "knew or should have known of the injury upon which the action is based." *Kach*, 589 F.3d at 634. This is an objective inquiry; the Court asks what a reasonable person should have known, not what Mills actually knew. *See id.* "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the same time the plaintiff suffers an injury." *Id.*

---

[16]     Mills also brings a claim under Section 1983 for "assault." (*See* ECF 16, Count III.) This is not a cognizable claim, and the Court construes it as duplicative of her excessive force claim.

Walker, Liciardello, and Speiser[17] searched 747 N. 37th Street, and Mills was arrested, on January 5, 2011. The District Attorney's Office filed a criminal complaint against Mills on January 6, 2011 charging her with possession of a controlled substance with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia, and she was arraigned on the charges the same day. Mills' claims for excessive force and unjustified search accrued when the officers searched the subject premises and arrested her on January 5, 2011. Her false arrest claim accrued when she was detained pursuant to legal process on January 6, 2011. *Wallace v. Keto*, 549 U.S. 384, 389-90 (2007); *see also Moore v. Pennsylvania*, No. 22-1945, 2022 WL 7375509, at *2 (3d Cir. Oct. 13, 2022); *Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021). Mills filed her first complaint in January 2014—well beyond the two-year statute of limitations. Her Section 1983 claims for excessive force, false arrest, and unjustified search are thus time-barred, and Liciardello, Speiser, Alice, and Dunne are entitled to summary judgment in their favor as to these claims based on the statute of limitations.

The Officers also contend the statute of limitations bars Mills' Section 1983 conspiracy claim (Count X). They contend her federal conspiracy claim accrued on the date of each overt act causing injury to Mills, and the last act in the alleged conspiracy was Walker's January 24, 2011 preliminary hearing testimony. Therefore, they argue Mills' Section 1983 conspiracy claim had to be brought by January 24, 2013. (*See* ECF 66 at 23; ECF 68-3 at 7; ECF 69 at 15.) However, the Officers fail to recognize that Mills' conspiracy claim is also based on her malicious prosecution claim, which they concede is not time barred, and so they fail to cite relevant binding Third Circuit

---

[17]     Officers Dunne and Alice arrived at the property after the search warrant was executed.

precedent.

According to Mills, the Officers violated her constitutional rights "while acting under the color of law." (ECF 16, Count X ¶ 64.)[18] She alleges they acted "in concert and conspiracy" to commit "acts in violation of [her] constitutional rights and against the laws of Pennsylvania . . . as stated in the above paragraphs," and that they "made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct." (*Id.*) The referenced constitutional violations include Mills' malicious prosecution claim. (*See, e.g.*, *id.*, Count VIII ¶¶ 57-59.)

The Third Circuit has held that a Section 1983 conspiracy claim based on malicious prosecution does not accrue until the malicious prosecution claim accrues—here, upon the favorable termination of Mills' criminal case. *Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989); *Wiltz v. Middlesex Cnty. Off. of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007) ("The statute of limitations on malicious prosecution claims 'does not begin to run until the underlying criminal proceedings are terminated in plaintiff's favor.' . . . The same is true for civil rights conspiracy claims involving alleged malicious prosecution.") (quoting *Rose*, 871 F.2d at 352); *see also Coello v. DiLeo*, 43 F.4th 346, 355-56 (3d Cir. 2022) (holding conspiracy claims brought under 42 U.S.C. § 1985 based (in part) on malicious prosecution do not accrue until the favorable termination of a criminal conviction because the claim would necessarily imply the invalidity of the plaintiff's criminal conviction). The question of favorable termination depends on *why* a conviction was *nolle prossed*. *See, e.g.*, *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (though "a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious

---

18      The Court cites the Amended Complaint only for purposes of construing Mills' claim.

prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably . . . . A nol pros signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused.") (internal quotation and citation omitted). Here, however, the result is immaterial to the statute of limitations question, because in either case Mills' federal conspiracy claim would not be time-barred—the proceedings either favorably terminated on December 6, 2013 (when Judge Woods-Skipper *nolle prossed* her conviction) (ECF 16 ¶ 21), which is within the two-year statute of limitations, or the proceedings have yet to do so.[19] So, while Mills cannot proceed on her Section 1983 conspiracy claim based on a conspiracy to use excessive force, falsely arrest her, or unjustifiably search the premises, her Section 1983 conspiracy claim based on a conspiracy to maliciously prosecute her is not time-barred.

Mills' state law claims—battery (Count II), assault (Count IV), false imprisonment (Count VI), conspiracy (Count XI), intentional infliction of emotional distress (Count XII), and negligent infliction of emotional distress (Count XIII)—are each subject to a two-year statute of limitations. *See* 42 Pa. C.S. § 5524(1), (7); *Beasley v. Young, Ricchiuti, Caldwell & Heller, LLC*, No. 2873 EDA 2012, 2013 WL 11250696, at *4 n.6 (Pa. Super. Ct. Nov. 4, 2013) ("It is well-settled that the statute of limitations for conspiracy is the same as that for the underlying action which forms the basis of the conspiracy.") (citing *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 287

---

[19]     The Court is not determining whether Mills' criminal conviction favorably terminated. Because the evidentiary record does not include the reasoning behind Judge Sheila Woods-Skipper's decision which *nolle prossed* Mills' charges, the Court cannot make a finding as to whether such *nolle prosequi* constituted a favorable termination for purposes of deciding when the conspiracy to maliciously prosecute claims accrued.

n.1 (Pa. Super. Ct. 1997)); *see also Stovall v. Kallenbach*, No. 1683 WDA 2018, 2019 WL 2808297, at *4 (Pa. Super. Ct. July 2, 2019) ("A claim for the intentional infliction of emotional distress is governed by a two-year statute of limitations.") (citing 42 Pa. C.S. § 5524(7)); *Buchan v. Milton Hershey Sch.*, 208 A.3d 1081, 1084 (Pa. Super. Ct. 2019) (negligent infliction of emotional distress has a two-year statute of limitations)). "The time to file begins running 'from the time the cause of action accrued[.]'" *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021) (quoting 42 Pa. C.S. § 5502(a)). The "clock 'begins to run as soon as the right to institute and maintain a suit arises"—"normally . . . 'when an injury is inflicted'"—and the "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Id.* (citing *Wilson v. El-Daif*, 964 A.2d 354, 361 (Pa. 2009); *see also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

As with her similar federal claims, the events giving rise to Mills' state law claims for battery, assault, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress occurred on January 5 and 6, 2011. Thus, the claims she brought for the first time in January 2014 are time-barred.

Mills' state law conspiracy claim, though, presents the same problem as her parallel federal claim. She alleges: "Officers, acting in concert and conspiracy, committed acts . . . against the laws of Pennsylvania. The defendant Officers made statements among themselves and others in order to conceal their unlawful . . . conduct." (ECF 16 ¶ 67.) This includes her state law malicious prosecution claim, which is timely because it does not accrue until the criminal proceedings terminate in Mills' favor. *Sicola v. First Nat'l Bank of Altoona*, 170 A.2d 584, 586 (Pa. 1961); *see also Cap v. K-Mart Discount Stores, Inc.*, 515 A.2d 52, 53 (Pa. Super. Ct. 1986). The Officers

21

concede as much in their briefing. (ECF 66, Defs.' Mot. For Summ. J. at 22) [hereinafter ECF 66, Defs.' Mot.]; ECF 68-3 at 5; ECF 69 at 10.) Therefore, as with her federal conspiracy claim, Mills' claim based on the Officers' alleged conspiracy to maliciously prosecute her is timely. But the Officers are correct that her claims for conspiracy to commit assault, battery, false imprisonment, and negligent and intentional infliction of emotional distress are time-barred.

### B.  Mills has not demonstrated genuine issues of material fact remain with respect to her timely federal malicious prosecution claim (Count VIII) against Alice and Dunne.

Alice and Dunne move for summary judgment with respect to Mills' federal malicious prosecution claim against them under 42 U.S.C. § 1983. To withstand summary judgment, Mills must show no question of genuine material fact exists as to whether a person acting under the color of state law violated her rights as protected by the Constitution or the laws of the United States. *E.g.*, *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Mills' Amended Complaint is less than precise, but the Court considers her claim as if she seeks to challenge violations of her rights under the Fourth and Fourteenth Amendments. (ECF 16 ¶¶ 1, 34.) She also asserts parallel malicious prosecution claims under Pennsylvania tort law, over which this Court may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

To establish her Section 1983 malicious prosecution claim, Mills must show: (1) Alice and/or Dunne initiated a criminal proceeding against her; (2) the criminal proceeding terminated in her favor; (3) it was initiated without probable cause; (4) Alice and/or Dunne acted maliciously or with a purpose other than bringing Mills to justice; and (5) as a consequence of the legal

proceeding, she suffered a deprivation of her liberty akin to a seizure.[20] *Estate of Smith v. Marasco*, 318 F.3d 497, 513, 521 (3d Cir. 2003). Mills has not shown a genuine issue of material fact exists with respect to the first element—initiation of a criminal proceeding. Even if she had, her malicious prosecution claims against Alice and Dunne cannot proceed to trial because there are no material questions of fact with respect to whether she has shown either the probable cause (third) or malice (fourth) elements.

> ### 1. Mills fails to establish a genuine dispute of material fact as to whether either Alice or Dunne initiated a criminal proceeding against her.

Generally, prosecutors—not police officers—initiate criminal proceedings against a defendant. *See, e.g.*, *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (citing *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005)). However, an officer may initiate a criminal proceeding in the context of a malicious prosecution claim if he "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Id.*; *see also Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.") (internal quotations and citations omitted)). Officers can be liable for malicious prosecution if they

---

[20] As noted earlier, Mills' charges were *nolle prossed* by Judge Sheila Woods-Skipper on December 6, 2013 (ECF 16 ¶ 21.) Thus, whether this *nolle prosequi* constituted favorable termination may be relevant for establishing the second element of her malicious prosecution claims. But because Dunne does not address this element in his briefing, while Alice assumes for purposes of his motion that the *nolle prosequi* constituted a favorable termination (*see* ECF 66 at 8 n.2), the Court presumes this element is not at issue. As to the fifth element, which neither officer addresses, Mills' arrest and subsequent incarceration easily establish she suffered a seizure-like deprivation of liberty.

"influenced or participated in the decision to institute criminal proceedings" *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (citation omitted)[21]; *see also Gilbert v. Feld*, 788 F. Supp. 854, 861 (E.D. Pa. 1992) (citations omitted). An officer may thus be liable if he gives a prosecutor misleading or false reports, fails to disclose exculpatory evidence, or otherwise interferes with the prosecutor's exercise of independent judgment as to whether to prosecute. *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017). The same goes for malicious prosecution under Pennsylvania law. *See, e.g.*, *Hess v. County of Lancaster*, 514 A.2d 681, 683-84 (Pa. Cmwlth. Ct. 1986) ("It is not necessary that defendant institute the proceedings himself. Liability for malicious prosecution can also attach when defendant influences a third party to initiate the proceedings.").

Defendant officers have been found to initiate a criminal proceeding where they both arrested and personally submitted a criminal complaint against the plaintiff. *See, e.g.*, *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020). Courts in this district have also found the initiation element satisfied when defendant officers built the "factual basis for probable cause to arrest." *Gilyard v. Dusak*, No. CV 16-2986, 2017 WL 2813225, at *9 (E.D. Pa. June 29, 2017). However, merely providing a tip to another officer about suspected criminal activity does not rise to the level of initiating a criminal proceeding. *See, e.g.*, *Strange v. Freeman*, No. 11-7911, 2012 WL 5494666, at *3 (E.D. Pa. Nov. 13, 2012). And an officer does not initiate a criminal proceeding simply by arresting someone. *Id.* at *8 (finding the defendant officer's arrest of the plaintiff, even if improper,

---

[21]     In *Halsey*, the Third Circuit reinstated the plaintiff's malicious prosecution claim "principally because the prosecutor instrumental in the initiation of the criminal case against [the plaintiff] has acknowledged that the false confession that [the defendant officers] claimed they obtained from [the plaintiff] contributed to the prosecutor's decision to charge [the plaintiff]." *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014). Thus, *Halsey* presented a clear and material connection between the information the officers provided and the prosecutor's ultimate decision to prosecute the plaintiff. Mills' situation is not analogous.

was insufficient to establish malicious prosecution); *see also Reynolds v. Municipality of Norristown*, No. 15-16, 2016 WL 10571905, at *1 (E.D. Pa. Dec. 28, 2016) (finding the arresting officer who "was fulfilling the ministerial duty of effectuating the [plaintiff's] arrest" with "no further involvement in th[e] case" did not initiate a criminal proceeding), *vacated and remanded on other grounds by* 716 F. App'x 80 (3d Cir. 2017); *Johnson v. Borough of Collingdale*, No. 08-5613, 2009 WL 3073914, at *4 (E.D. Pa. Sept. 25, 2009) ("Plaintiff cites no authority to suggest that being involved in an arrest is tantamount to initiating legal proceedings.").

For example, in *Strange*, this Court found a defendant officer did not initiate a criminal proceeding against the plaintiff when he provided information that another officer then used as the basis for filing a criminal complaint, but otherwise completed no relevant paperwork and had no contact with the plaintiff beyond arresting and bringing her to the police station. 2012 WL 5494666, at *3. In *DeJesus v. Wehrman*, the Court determined that defendant officers did not initiate a criminal proceeding even where they preliminarily investigated and handcuffed the plaintiff, searched his person, belongings, and the house he was present in, and reported their findings to another officer who ultimately brought charges against the plaintiff. No. 16-04745, 2017 WL 4310245, at *1 (E.D. Pa. Sept. 27, 2017) (finding parole agents who surveilled a parolee's residence, handcuffed the parolee and searched his person and residence, and reported information about drugs and related paraphernalia they had confiscated from the residence to a detective, did not initiate a criminal proceeding). The court explained that the defendants' prior search was not at the detective's direction, the detective solely arrested, charged, and filed paperwork relevant to the plaintiff, and the agents did not otherwise lobby the detective to file criminal charges against the plaintiff. *Id.* at *5.

Both Alice and Dunne argue that Mills fails to establish that they initiated a criminal proceeding against her. Alice argues he did not initiate a criminal proceeding against Mills, because there is no evidence that he furnished any information—false or otherwise—to the prosecutor that led to Mills' prosecution. (ECF 66, Defs.' Mot. at 12.) Alice also notes that he did not prepare any police paperwork relevant to Mills' prosecution. (*Id.*) These statements are supported by the record, and Mills does not dispute them.

Dunne similarly argues that Mills' malicious prosecution claims fail because she has provided no evidence of his personal involvement in her prosecution. (ECF 68-3, at 5-6.) According to Dunne, he merely "pass[ed] information to Jeffrey Walker, who then performed an independent . . . surveillance of the property at which [Mills] was arrested." (*Id.* at 8.) Because he was not involved in the confidential informant's controlled buy, drafting the search warrant, or the subsequent court proceedings, Dunne argues Mills fails to establish his personal involvement in her prosecution and thus the initiation element of her malicious prosecution claims against him. (*Id.*)

Mills responds only by arguing that Walker, Alice, and Dunne had an arrangement, whereby Walker would name Alice and Dunne as a source of information in his probable cause affidavits—sometimes falsely—so that Alice and Dunne could get paid court time in return for protecting Walker. (ECF 74 at 4-6.) She points to multiple calls from Walker to Alice and Dunne, including a call from Walker in which he *may* have asked Alice and Dunne to come to the scene of the 747 N. 37th Street search. (*Id.* at 6.) She also argues that Walker's calls to Alice and Dunne prior to Mills' preliminary hearing is evidence they were coordinating their stories. (*Id.* at 5.) Yet, Mills provides no affirmative evidence to prove the alleged scheme between Walker, Alice, and

Dunne. Rather, to show there was a scheme to falsify the Affidavit of Probable Cause, she relies on Walker's testimony—which does not show that Alice or Dunne directly engaged in any such scheme—as well as the mere fact that there were calls between the three officers. This is not enough to establish a genuine dispute as to whether Dunne and Alice initiated a criminal proceeding against Mills.

Here, there is no evidence in the record that Alice or Dunne provided false information to or concealed material information from the prosecutor. Nor is there even any evidence that either provided false information to Walker or hid material information from him. At most, Alice and Dunne passed information along to Walker—the officer who ultimately sought and executed the search warrant, filed paperwork, and brought charges against Mills. Their involvement, like that of the officer in *Strange*, went no further than providing Walker information and arresting and searching Mills. Neither had any subsequent contact with Mills (nor any contact with the prosecutor). And Alice and Dunne did even less than the agents in *DeJesus*, who were found not to have initiated a criminal proceeding. Moreover, unlike the officer in *Harvard*, neither Alice nor Dunne submitted an affidavit of probable cause and criminal complaint charging Mills—only Walker did that. The mere facts that Alice may have arrested Mills and that Dunne may have searched Mills are insufficient to raise a material question of fact as to whether either initiated a criminal proceeding against her.[22]

---

[22]     In cases where plaintiffs have shown a genuine dispute of material fact on the initiation element, the arresting officer is often the same individual who submitted a probable cause affidavit and filed a criminal complaint against the plaintiff. *See, e.g.*, *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012) (finding a genuine dispute on the initiation element when the defendant officer filed a complaint or incident report against the plaintiff, served as the complainant for the complaint, and acknowledged that his information was the basis of the charges against the plaintiff). The Third Circuit's analysis in *Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d

  **2.**  **Even if there were a genuine dispute as to whether either Alice or Dunne initiated a criminal proceeding, Mills has not shown there is a genuine dispute as to whether they did so without probable cause.**

An officer who arrests or initiates a prosecution against an individual without probable cause commits a constitutional violation that may support a Section 1983 claim. *See Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997); *see also Carney v. Pennsauken Twp. Police Dep't*, 598 F. App'x 80, 82 (3d Cir. 2015) (citations omitted). The Court must evaluate the totality of the circumstances, including both the officer's knowledge upon the time of the arrest or initiation of the prosecution and the events immediately precipitating such action, to determine whether probable cause existed. *See United States v. Harris*, 482 F.2d 1115, 1117 (3d Cir. 1973); *see also Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (holding courts must look at "what facts were available to [a defendant officer] when he made his discretionary decision to initiate the proceedings against [the plaintiff].")). Though the existence of probable cause in a Section 1983 case is usually a factual question, a court may find probable cause as a matter of law if the evidence could not reasonably support a contrary factual finding when viewed in the most favorable light to the plaintiff. *See, e.g.*, *Demaske v. Bonin*, No. 21-2513, 2022 WL 1551837, at *1 (3d Cir. May 17, 2022) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

The summary judgment record, viewed in the most favorable light to Mills, shows Alice

---

Cir. 1993), *overruled on other grounds by* 47 F.3d 586 (3d Cir. 1995), also supports the conclusion that an individual can only be responsible for instituting criminal proceedings for purposes of malicious prosecution if he "actually swears out the complaint or is responsible for the initiation of the proceedings by explicitly directing that a prosecution be started against the accused." *Id.* at 465 (citations omitted).

and Dunne had probable cause to initiate criminal proceedings against her. Assuming, without deciding, that Alice arrested Mills,[23] he did so only after the Narcotics Field Unit executed a facially valid search warrant, recovered drugs from the Property, and identified Mills (via Walker) as the person who had sold drugs to a confidential informant earlier that day. (*See* ECF 66, Ex. C at 7, 44, 52-54; ECF 66, Ex. H.) The undisputed evidence also shows that neither Alice nor Dunne knew Walker had falsified the Affidavit of Probable Cause and that neither officer participated in Walker's investigation nor use of the confidential informant. (ECF 66, Ex. B at 31, 57, 59; ECF Ex. C at 7, 22-24, 33, 44.) Given the totality of the circumstances, even if Dunne and/or Alice "initiated criminal proceedings" against her, Dunne and Alice had probable cause to take such action.

The same can be said of the alleged tip that Alice and Dunne provided to Walker about drug activity at 747 N. 37th Street. To the extent that providing such information constituted initiating a criminal proceeding against Mills, there also is no probable cause issue. Mills provides no evidence to show that Dunne or Alice gave Walker (or prosecutors) false information. Dunne and Alice, if they provided Walker any information at all, merely gave Walker second-hand information that he used to start investigating Mills. And even if Dunne or Alice had provided false information to Walker, which Walker then used in his affidavit for the search, such information was neither material nor necessary to the judge's probable cause finding. As the Officers correctly assert, Mills was only prosecuted because Walker—by himself—conducted a

---

[23]      While Walker reported that Alice arrested Mills after Walker identified her as the individual who had sold PCP to the confidential informant (ECF 66, Ex. H), Alice testified that he did not recall arresting Mills. (ECF 66, Ex. B, Alice Dep. Tr., 41:21-23.)

controlled buy at the Property with a confidential informant, the results of which he cited in his probable cause affidavit. (*See* ECF 66, Alice Br. at 12 (ECF p. 26).) This is what led to the execution of the search warrant on the Property, the seizure of drugs and related evidence, and Mills' subsequent arrest and prosecution. (*Id.*) Any information Alice or Dunne allegedly provided to Walker did not establish the probable cause necessary for securing the search warrant and ultimate prosecution in this case.

> **3.      Even if Mills had established genuine disputes on the initiation and probable cause elements, she has not established a genuine issue as to whether either Alice or Dunne acted maliciously or with a purpose other than bringing Mills to justice.**

To prevail on her Section 1983 malicious prosecution claim, Mills must also show the relevant defendant acted maliciously. A defendant acts with malice if he held ill-will or spite, used prosecution for an improper purpose, or prosecuted the plaintiff without believing in her guilt. *Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993). Courts may also infer malice when a defendant lacked probable cause. *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 871 (E.D. Pa. 2000).[24]

Here, there is no record evidence showing that Alice or Dunne acted with any "ill will" or "spite" toward Mills. Nor is there any evidence that either prosecuted Mills for any improper purpose or without believing in her guilt—indeed, the record indicates that neither officer

---

[24]      In *Gallo v. City of Philadelphia*, the Third Circuit questioned the continuing legitimacy of requiring plaintiffs to show malice, because the alleged harm is a seizure without probable cause. 161 F.2d 217, 222 n.6 (3d Cir. 2004). Nevertheless, the Court analyzes this element with respect to Mills because malice remains a requirement for Section 1983 malicious prosecution claims. *See Gahagan v. City of Phila.*, No. CV 21-2523, 2022 WL 16745098, at *7 (E.D. Pa. Nov. 7, 2022) (*quoting Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007)).

prosecuted Mills *at all*. Given the probable cause discussion above, the Court will not infer malice. Thus, Mills has failed to establish a genuine material dispute on this element.

### C. Mills' timely state malicious prosecution claim (Count IX) survives neither Alice nor Dunne's motion for summary judgment for the same reasons that her federal claim for malicious prosecution fails.

To prevail on her state law malicious prosecution claim, Mills must demonstrate that: (1) the relevant defendant initiated proceedings against her maliciously and without probable cause; and (2) the proceedings ended in her favor. *Bradley v. General Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. Ct. 2001) (citation omitted). Because it depends upon the same elements as its federal counterpart[25]—minus the requirement that she suffer a seizure-like liberty deprivation—Mills' state law malicious prosecution claim fails to withstand summary judgment for the same reasons.

### D. Mills' timely federal and state law conspiracy claims against Alice and Dunne (Counts X and XI) fail because she has not established a genuine issue of fact exists with respect to her malicious prosecution claims against them.

Mills also brings conspiracy claims predicated on her federal and state malicious prosecution claims. To bring a civil rights conspiracy claim under Section 1983, she must show: "(1) [t]he existence of a conspiracy; (2) [a]n agreement or meeting of the minds to violate constitutional or civil rights; and (3) [a] deprivation of those rights in furtherance of the conspiracy." *E.g.*, *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 386-87 (E.D. Pa. 2018). A conspiracy claim predicated on a 1983 malicious prosecution claim thus requires Mills to prove

---

[25] *See Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988) (stating that "the elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort.").

the relevant defendant deprived her of the constitutional right at issue—here, Mills' Fourth and Fourteenth Amendment rights. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 372 n.14 (3d Cir. 2016). Because Mills' Section 1983 malicious prosecution claims against Alice and Dunne fail, her derivative Section 1983 conspiracy claims also fail. *See id.*; *see also Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 421-22 (E.D. Pa. 2020).[26]

The same is true with respect to Mills' state conspiracy to commit malicious prosecution claim. Pennsylvania law requires plaintiffs bringing a conspiracy to maliciously prosecute claim to establish: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243, 278 (E.D. Pa. 2015) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). Though a plaintiff may prove a conspiratorial agreement via circumstantial evidence, circumstantial evidence that merely "allows the jury to base a finding on conjecture or speculation" is insufficient to demonstrate a conspiracy.[27] *Urbanic v. Rosenfeld*, 616 A.2d 46, 54 (Pa. Commw. Ct. 1992). As with her federal conspiracy claim, because Mills fails to establish a genuine issue of material fact

---

[26]    Though not necessary to the result, Mills has failed to show a genuine dispute as to whether Alice, Dunne, and Walker had a conspiracy, agreement, or meeting of the minds to maliciously prosecute Mills—the other elements required for a Section 1983 conspiracy to commit malicious prosecution claim.

[27]    Mills' argument that a conspiracy can be implied because Walker would only have made false allegations if he "was sure that Alice and Dunne were part and parcel of the conspiracy and perjury" amounts to mere conjecture and speculation insufficient to establish a conspiracy. (ECF 74 at 17.)

as to the underlying state malicious prosecution claim, she also fails to establish a genuine issue

exists with respect to her state conspiracy claim. Nothing in the record shows that either Alice or

Dunne were aware of Walker's falsification of the Affidavit of Probable Cause, let alone that they

shared a common purpose with Walker to maliciously prosecute Mills.

Ultimately, none of Mills' claims against Alice and Dunne can proceed to trial, so the Court

grants summary judgment in their favor.

> **E.      Mills' timely federal and state malicious prosecution claims and derivative conspiracy claims against Liciardello and Speiser do not survive summary judgment for similar reasons.**

Mills also fails to demonstrate genuine issues of material fact remain regarding her timely

federal and state malicious prosecution claims and derivative conspiracy claims against Liciardello

and Speiser. She fares no better on her claims against them for reasons similar to those given for

Alice and Dunne.

As the summary judgment record reflects, neither Liciardello nor Speiser provided any

information to the prosecutor (nor Walker) regarding Mills and alleged drug activity at 747 N. 37th

Street. Neither officer prepared nor provided any information for the Affidavit of Probable Cause

for the search warrant, nor completed any paperwork at all for the case. (ECF 69, Ex. D; ECF 66,

Ex. H; ECF 66, Ex. I at 2; ECF 66, Ex. J.) Nor is there any evidence that either officer knew Walker

had falsified the affidavit. Neither officer participated in Walker's surveillance of the Property nor

his use of the confidential informant, nor did they otherwise investigate Mills or the Property.

(ECF 69, Ex. E.) Liciardello and Speiser merely participated in Walker's execution of the search

warrant and recovered evidence from that search—namely PCP (confiscated by Liciardello) and

33

related packaging materials (confiscated by Speiser).[28] (ECF 69, Ex. C; ECF 69, Ex. F.) Mills disputes none of these facts, all of which are supported by the record. The Court thus has no basis to find Liciardello or Speiser "initiated a criminal proceeding" against Mills.

Even if Liciardello and/or Speiser did initiate a criminal proceeding against Mills (and, to be clear, there is no record evidence sufficient to show that they did), she still has not shown that they did so without probable cause or with malice. Liciardello and Speiser participated in the execution of a facially valid search warrant—which, again, they had no reason to believe was invalid. The warrant was based on an Affidavit of Probable Cause that described an individual who matched Mills' appearance and attributed this information to both a tip from area patrol officers and a controlled purchase by a confidential informant. (ECF 69, Ex. D.) Under the totality of the circumstances, both Liciardello and Speiser could reasonably infer that Mills possessed drugs and related paraphernalia when they went to the Property and executed the search. As for the maliciousness prong, there is no record evidence that Liciardello or Speiser acted with "ill will" or "spite" or for an improper purpose when they executed the search. Nor can malice be inferred from a lack of probable cause since both officers had probable cause to execute the warrant. Thus, as with Alice and Dunne, Mills also fails to establish a genuine dispute as to the probable cause and maliciousness prongs of her federal and state malicious prosecution claims against Liciardello and Speiser.

---

[28]     An officer does not initiate a criminal proceeding merely by assisting in the execution of a search warrant. *See, e.g.*, *Malcomb v. McKean*, No. 11-1087, 2014 WL 4662080, at *9 (W.D. Pa. Sept. 12, 2014) (finding the defendant officer did not initiate the criminal proceeding where his "only involvement in the investigation was his assistance to [another officer] in executing the search warrant.").

Mills' derivative federal and state conspiracy to commit malicious prosecution claims against Liciardello and Speiser likewise fail for the reasons set forth with respect to her conspiracy claims against Alice and Dunne.

Accordingly, there are no factual issues left for a jury to decide with respect to any of Mills' claims against Liciardello and Speiser.

## IV. CONCLUSION

The Court grants the Officers' motions for summary judgment in their entirety. Mills' claims for excessive force, battery, assault, unlawful arrest, false imprisonment, unjustified search, intentional infliction of emotional distress, and negligent infliction of emotional distress against the Officers (Counts I-II, IV-VII, and XII-XIII) are barred by the statute of limitations. And on the summary judgment record, Alice, Dunne, Liciardello and Speiser are entitled to judgment as a matter of law with respect to Mills' timely federal and state malicious prosecution claims and derivative conspiracy claims against them (Counts VIII-XI).[29] None of Mills' arguments demonstrate an issue of fact for the jury with respect to whether Alice, Dunne, Liciardello, or Speiser maliciously prosecuted her or engaged in a conspiracy to do so.

An appropriate order follows.

---

[29]     Alice (Alice Br. at 12-13, ECF 66 at 25-27), Liciardello, and Speiser (ECF 69 at 21) also argue Mills' federal malicious prosecution claim cannot proceed against them because they are entitled to qualified immunity. But the Court need not, and does not, reach their arguments because the record does not contain enough evidence to raise a material question of fact with respect to any element of Mills' Section 1983 malicious prosecution claims against them.